IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BETTER BAGS, INC., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. H-11-1516 |
| ILLINOIS TOOL WORKS, INC., | § | |
| FANTAPAK INTERNATIONAL CORP., | § | |
| INTEPLAST GROUP, LTD., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

This action was filed on March 20, 2011, by plaintiff/counter-defendant Better Bags, Inc. ("BBI"), against defendants/counter-plaintiffs Illinois Tool Works, Inc. ("ITW"), Fantapak International Corp. ("Fantapak"), and Inteplast Group, Ltd. ("Inteplast") for declaratory judgment of non-infringement and invalidity of U.S. Patent No. 7,134,788, entitled "Resealable Bag with Top Tear-Away Header and Zipper and Method of Manufacturing the Same" ("the '788 Patent").[1] Subsequently, defendants/counter-plaintiffs ITW and Fantapak filed counterclaims of patent infringement against BBI asserting that BBI infringes the '788 Patent's Claims 1, 3, 6, 8, 9, 10, 11, 12, and 13.[2] Pending before

---

[1]Complaint, Docket Entry No. 1.

[2]See Defendant Illinois Tool Works Inc.'s Answer and Counterclaim for Patent Infringement, Docket Entry No. 13; Counter Plaintiffs Illinois Tool Works Inc.'s and Fantapak International Corp.'s First Amended Counterclaim for Patent Infringement, Docket (continued...)

the court are Fantapak's Motion for Sanctions (Docket Entry No. 58), Fantapak's and Inteplast's Motion to Strike Better Bags, Inc.'s Expert Invalidity Report, to Strike its Invalidity Contentions, and Exclude All Alleged Evidence and Testimony Based on Undisclosed Invalidity Contentions (Docket Entry No. 60), and Fantapak and Inteplast's Motion for Summary Judgment of Patent Infringement with Incorporated Memorandum of Law ("Fantapak and Inteplast's Motion for Summary Judgment") (Docket Entry No. 61). For the reasons stated below, the motion for summary judgment will be granted, the motion to strike and exclude will be granted in part and denied in part, and the motion for sanctions will be denied without prejudice to being reurged at trial.

## I. **Background**

BBI filed this action on March 20, 2011, seeking declaratory judgment of non-infringement and invalidity of the '788 Patent. Defendants ITW and Fantapak filed counterclaims asserting that BBI infringes the '788 Patent's Claims 1, 3, 6, 8, 9, 10, 11, 12, and 13. On October 15, 2012, Fantapak and Inteplast filed their motion for sanctions (Docket Entry No. 58), and their motion to strike BBI's invalidity contentions and expert invalidity report, and to exclude all evidence and testimony based on undisclosed invalidity

---

[2](...continued)
Entry No. 23; and Counter Plaintiffs Illinois Tool Works Inc., Fantapak International Corp., and Inteplast Group, Ltd.'s Second Amended Counterclaim for Patent Infringement ("Second Amended Counterclaim"), Docket Entry No. 54.

contentions (Docket Entry No. 60). On October 18, 2012, Fantapak and Inteplast filed their motion for summary judgment on their counterclaims for infringement of the '788 Patent (Docket Entry No. 61). On October 19, 2012, the parties filed their Joint Motion to Stay the Scheduling Control Order (Doc. No. 20) (Docket Entry No. 62). On October 22, 2012, the court entered an Order Granting Joint Motion to Stay the Scheduling Control Order [Doc. No. 20] (Docket Entry No. 63) pursuant to which BBI was to file responsive briefs to the pending motions by November 8, 2012, Fantapak and Inteplast were to file reply briefs by November 19, 2012, the close of discovery was set for 90 days after the court issues orders on all the pending Fantapak and Inteplast motions, and the litigation was stayed pending the court's disposition of all the Fantapak and Inteplast motions. Although on November 8, 2012, BBI timely filed responses to both the motion for sanctions (Docket Entry No. 64) and the motion to strike and exclude (Docket Entry No. 65), BBI has still not responded to the motion for summary judgment even though more than five months have passed since October 18, 2012, when Fantapak and Inteplast filed their motion for summary judgment, and over four months have passed since November 8, 2012, the date by which BBI was to have responded to that motion.

## II.   **Motion for Summary Judgment**

Fantapak and Inteplast argue that they are entitled to summary judgment on their infringement claims because "BBI has admitted

-3-

that based on the plain and ordinary meaning of the claim terms, 'the elements of the asserted claims are literally present in the bags being accused of infringement.'"[3]

## A.   Standard of Review

"Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." <u>Syntex (U.S.A.) LLC v. Apotex, Inc.</u>, 407 F.3d 1371, 1377 (Fed. Cir. 2005) (citing Fed. R. Civ. P. 56(c); <u>Anderson v. Liberty Lobby, Inc.</u>, 106 S.Ct. 2505, 2509-2510 (1986)). "A genuine dispute is shown to exist if sufficient evidence is presented such that a reasonable fact finder could decide the question in favor of the non-moving party." <u>Opryland USA Inc. v. Great American Music Show, Inc.</u>, 970 F.2d 847, 850 (Fed. Cir. 1992). "While the non-moving party is not required to present its entire case in response to a motion for summary judgment, to defeat the motion the non-movant must present sufficient evidence to show an evidentiary conflict as to the material fact in dispute. . . with due consideration to the evidentiary burdens." <u>Id.</u> "Summary judgment may properly be granted on questions of fact when no reasonable jury could reach a contrary verdict, even after drawing all reasonable factual inferences in favor of the non-movant."

---

[3]Fantapak and Inteplast's Motion for Summary Judgment, Docket Entry No. 61, p. 1.

-4-

Hoffer v. Microsoft Corp., 405 F.3d 1326, 1328 (Fed. Cir. 2005),
cert. denied, 126 S.Ct. 1037 (2006).

On October 18, 2012, Fantapak and Inteplast filed the motion
seeking summary judgment on their counterclaims for infringement of
the '788 Patent (Docket Entry No. 61).  BBI has not responded to
the pending motion for summary judgment.  Local Rule 7.3 provides
that "[o]pposed motions will be submitted to the judge twenty-one
days  from  filing  without  notice  from  the  clerk  and  without
appearance by counsel."  S.D.Tex.R. 7.3 (2000).   Local Rule 7.4
provides:

> Failure to respond will be taken as a representation of
> no opposition.   Responses to motions
>
> A.    Must be filed by the submission day;
>
> B.    Must be written;
>
> C.    Must include or be accompanied by authority; and
>
> D.    Must  be  accompanied  by  a  separate  form  order
>       denying the relief sought.

S.D.Tex.R. 7.4 (2000).

Although  a district court may not grant summary judgment by
default simply because there is no opposition to the motion, the
court may accept as undisputed the movant's version of the facts
and grant a motion for summary judgment when the movant has made a
prima facie showing of entitlement to summary judgment.  See John
v. State of Louisiana (Board of Trustees for State Colleges and
Universities), 757 F.2d 698, 708 (5th Cir. 1985) (when the movant's

evidence establishes its right to judgment as a matter of law, the district court is entitled to grant summary judgment absent unusual circumstances); and <u>Eversley v. MBank Dallas</u>, 843 F.2d 172, 173-174 (5th Cir. 1988) (when the nonmovant fails to respond to a motion for summary judgment, the court does not err by granting the motion when the movant's submittals make a <u>prima facie</u> showing of entitlement to judgment as a matter of law). Therefore, in accordance with Local Rule 7.4, the court will take BBI's failure to respond to the pending motion for summary judgment as a representation of no opposition to the legal and factual assertions made in the motion. <u>See id.</u>

**B.   Motion for Summary Judgment**

Fantapak and Inteplast argue that they are entitled to summary judgment on their infringement claims because

> BBI has admitted that the accused bags contain all of the elements of the asserted claims, in both its answer to Fantapak's Interrogatory No. 1 (attached Ex. B) and in BBI's responses to Fantapak's First Request for Admission Nos. 1 - 51 (attached Ex. C). Moreover, BBI did not provide a rebuttal expert report to the infringement expert report of Victor Matias (Fantapak's technical expert).[4]

"A determination of patent infringement consists of two steps: (1) the court must first interpret the claim, and (2) it must then compare the properly construed claims to the allegedly infringing device." <u>Syntex</u>, 407 F.3d at 1377 (citing <u>Cybor Corp. v. FAS</u>

---

[4]<u>Id.</u> at n.1.

-6-

<u>Techs., Inc.</u>, 138 F.3d 1448, 1454 (Fed. Cir. 1998) (en banc)).  On
April 17, 2012, the parties filed a Joint Claim Construction Chart
Pursuant to Local Patent Rule 4-5(d) for U.S. Patent No. 7,134,788
(Docket Entry No. 40) in which they agreed that the claim terms and
phrases should be given their plain and ordinary meaning and,
therefore, that no construction of any of the claim terms was
necessary.  Because the parties have agreed that the claims require
no construction, the court's only task is to compare the claims to
the allegedly infringing bags.

On March 28, 2012, BBI provided responses to Fantapak's First
Set of Requests for Admission,[5] wherein BBI admitted that its
accused infringing bags include all of the characteristic features
of the limitations asserted in Claims 1, 3, 6, 8, 9, 10, 11, 12,
and 13 of the '788 Patent.[6]  Fantapak and Inteplast summarized the
characteristic features of these claim limitations and BBI's
admissions thereto in the chart copied below:[7]

---

[5]Plaintiff's Responses to Illinois Tool Works Inc.'s and
Fantapak International Corp.'s First Requests for Admission,
Exhibit C to Fantapak and Inteplast's Motion for Summary Judgment,
Docket Entry No. 61.

[6]U.S. Patent No. 7,134,788, Exhibit A to Fantapak and
Inteplast's Motion for Summary Judgment, Docket Entry No. 61,
columns 7-8.

[7]Fantapak and Inteplast's Motion for Summary Judgment, Docket
Entry No. 61, pp. 7-9 (citing U.S. Patent No. 7,134,788 columns 7-
8, and Plaintiff's Responses to Illinois Tool Works Inc.'s and
Fantapak International Corp.'s First Requests for Admission,
Responses 12-51, Exhibits A and C, respectively, to Fantapak and
Inteplast's Motion for Summary Judgment, Docket Entry No. 61).

| | '788 Patent Claims | BBI's Admissions |
|---|---|---|
| 1 | A resealable plastic bag, comprising: | YES - Response to RFA #12 |
| | a substantially planar shaped body exhibiting first and second opposing and foldable panels, | YES - Responses to RFA #13, #14 |
| | sealing connected along a pair of sides and, | YES - Response to RFA #15 |
| | in cooperation with a common bottom edge interconnecting said sides, forming an interior receptacle volume; | YES - Responses to RFA #16, #17 |
| | a pair of sealable bead portions, integrally formed into said planar shaped body and extending between said sides of said body; | YES - Responses to RFA #18, #19 |
| | an integrally formed header extending from a selected one of said bead portions; | YES - Responses to RFA #20, #21 |
| | a slider attachable to said bag, proximate a conjoining location associated with said bead portions and a removed portion of said header, permitting installation of said slider to contain said re-sealable bead portions there between; | YES - Responses to RFA #22, #23, #24 |
| | and a perforation line being established along said header, in close proximity and above said selected bead portion, in order to facilitate tear-away removal of said planar shaped body from said header substantially along said bead portion. | YES - Responses to RFA #25, #26, #27 |
| 3 | The resealable plastic bag according to claim 1, further comprising at least one aperture formed through said header and for mounting said header and bag in suspending fashion; | YES - Responses to RFA #28, #29 |
| 6 | The resealable plastic bag according to claim 1, said body having a specified shape and size, further comprising said slider being traversable across said bead portions and concurrently sectioning said body from said header along said perforation; | YES - Responses to FRA #30, #31 |
| 8 | The resealable plastic bag according to claim 1, further comprising a portion of said header being detached from said body across said perforation line, in order to facilitate installation of said slider. | YES - Responses to FRA #32, #33 |
| 9 | A sealable plastic bag comprising: a planar shaped body having first and second panels connected along opposite sides and a bottom to define an interior volume; | YES - Responses to RFA #34, #35, #36 |
| | a pair of engageable bead portions formed along opposing inner facing surfaces of said panels between said sides; | YES - Responses to RFA #37, #38 |

-8-

| | '788 Patent Claims | BBI's Admissions |
|---|---|---|
| | a header extending from a selected one of said bead portions in a direction opposite a selected body defining panel, | YES - Response to RFA #39 |
| | a perforation line extending within said header in parallel extending and approximate location to said selected bead portion; | YES - Responses to RFA #40, #41 |
| | and a slider attachable to said bag proximate a conjoining edge location associated with said bead portions and a removed edge portion of said header permitting installation of said slider, separation of said bead portions permitting top loading of product within said interior volume of said body, prior to tear-away removal of said planar shaped body from said header along said bead portions. | YES - Responses to RFA #42, #43, #45, #46 |
| 10 | The plastic bag as described in claim 9, further comprising traversing displacement of said slider along said bead portions sealing together said opposing bead portions concurrent with tear-away removal from said header portion. | YES - Responses to RFA #47, #48 |
| 11 | The plastic bag as described in claim 9, further comprising at least one aperture formed through said header for mounting said header and body in suspending fashion. | YES - Response to RFA #49 |
| 12 | The plastic bag as described in claim 9, further comprising a heat stapling process for securing together a plurality of headers associated with a like plurality of bodies. | YES - Response to RFA #50 |
| 13 | A sealable plastic bag comprising: a planar shaped body having first and second panels connected along opposite sides and a bottom to define an interior volume; a pair of engageable bead portions formed along opposing inner facing surfaces of said panels between said sides; a header extending from a selected one of said bead portions in a direction opposite a selected body defining panel, a perforation line extending within said header in parallel extending and approximate location to said selected bead portion; and a slider attachable to said bag proximate a conjoining location associated with said bead portions, anywhere between said opposite sides at which said header is detached from said perforation line to permit installation of said slider, separation of said bead portions permitting top loading of product within said interior volume of said body, prior to tear-away removal of said planar shaped body from said header along said bead portions. | YES - Response to RFA #51 |

On April 10, 2012, BBI submitted responses to interrogatories. Interrogatory No. 1 asked BBI to state the factual basis for any claims of non-infringement. In response, BBI admitted that all the elements of asserted Claims 1, 3, 6, 8, 9, 10, 11, 12, and 13 of the '788 Patent are literally present in the accused bags.[8] In pertinent part BBI expressly stated that

> Better Bags, Inc. responds that based on the information available to it as of the date of this response and assuming that all elements of the claims have plain and ordinary meaning, the elements of the asserted claims are literally present in the bags being accused of infringement.[9]

Defendants/counter-plaintiffs also argue that on August 17, 2012, Fantapak served on BBI the infringement expert report of Victor Matias, wherein Mr. Matias opined that the accused infringing BBI bags infringe the '788 Patent's Asserted Claims,[10] that rebuttal expert reports were due on September 14, 2012,[11] but that BBI has not rebutted Mr. Matias's report.[12]

---

[8]Id. at 2.

[9]Plaintiff's First Amended Responses to Illinois Tool Works Inc.'s and Fantapak International Corp.'s First Set of Interrogatories to Better Bags, Inc., Exhibit B to Fantapak and Inteplast's Motion for Summary Judgment, Docket Entry No. 61, p. 2.

[10]See Declaration of Dwayne Mason in Support of Fantapak and Inteplast's Motion for Summary Judgment of Patent Infringement ("Mason Declaration"), attached to Fantapak and Inteplast's Motion for Summary Judgment, Docket Entry No. 61, ¶ 4.

[11]See Patent Case - Scheduling Order, Docket Entry No. 20, ¶ 21.

[12]See Mason Declaration, attached to Fantapak and Inteplast's Motion for Summary Judgment, Docket Entry No. 61, ¶ 5.

In light of the summary judgment evidence submitted by defendants/counter-plaintiffs showing that BBI has responded to their requests for admission and interrogatories by acknowledging that the accused bags include all of the characteristic features of the limitations of asserted Claims 1, 3, 6, 8, 9, 10, 11, 12, and 13 of the '788 Patent, no reasonable fact-finder could decide the question of infringement in favor of BBI. See Opryland USA, 970 F.2d at 850. Accordingly, the court concludes that the summary judgment evidence establishes that there is no genuine issue of material fact for trial and that defendants/counter-plaintiffs are entitled to summary judgment on their claims that the accused bags infringe Claims 1, 3, 6, 8, 9, 10, 11, 12, and 13 of the '788 Patent. Thus, the motion for summary judgment will be granted.

### III. **Motion to Strike**

Asserting that BBI's invalidity contentions fail to comply with Local Patent Rule 3-3, Fantapak and Inteplast seek an order striking BBI's invalidity contentions and export report and excluding BBI's invalidity defenses.

### A. **Applicable Deadlines, Patent Rules, and Standard of Review**

On September 23, 2011, the court issued a Patent Case - Scheduling Order requiring each party to comply with P.R. 3-3 and P.R. 3-4 by serving "preliminary invalidity contentions" by November 18, 2011,[13] and setting July 27, 2012, as the "[d]eadline

---

[13]Patent Case - Scheduling Order, Docket Entry No. 20, ¶ 2.

for final invalidity contentions and to amend pleadings on invalidity claims."[14]  The court's order expressly stated: "Except as provided in P.R. 3-6, if the amendment would affect preliminary or final invalidity contentions, a motion must be made under P.R. 3-7 irrespective of whether the amendment is made before this deadline."[15]

Patent Rule 3-3 provides in relevant part that the Preliminary Invalidity Contentions must contain the following information:

(a)  the identity of each item of prior art that allegedly anticipates each asserted claim or renders it obvious, including:

(1)  each prior art patent identified by its number, country of origin, and date of issue;

(2)  each prior art publication identified by its title, date of publication, and author and publisher when feasible;

(3)  prior art under 35 U.S.C. § 102(b) identified by the item offered for sale or publicly used or known; the date the offer or use took place or the information became known; and the identity of the person or entity that made the use or that made and received the offer, or the person or entity that made the information known or to whom it was made known;[16]

(4)  prior art under 35 U.S.C. § 102(f) identified by the name of the person(s) from whom and the

_____

[14]Id. ¶ 18.

[15]Id.

[16]Pursuant to 35 U.S.C. § 102(b), a person is not entitled to a patent if the invention was "in public use or on sale in [the United States] more than one year prior to the date of the application for the patent in the United States."

-12-

circumstances under which the invention or any part of it was derived;[17] and

(5) prior art under 35 U.S.C. § 102(g) identified by the identities of the person(s) or entities involved in and the circumstances surrounding the making of the invention prior to the patent applicant(s);[18]

(b) whether each item of prior art anticipates each asserted claim or renders it obvious and, if the latter, the detailed bases for these contentions;

(c) a chart identifying where specifically in each alleged item of prior art each element of each asserted claim is found . . .

(d) any other invalidity grounds including, but not limited to indefiniteness under 35 U.S.C. § 112, ¶ 2, or lack of enablement or written description under 35 U.S.C. § 112, ¶ 1, of any of the asserted claims, including the detailed basis for these contentions.

Rules of Practice for Patent Cases in the Southern District of Texas (Effective January 1, 2008), Rule 3-3.  Patent Rule 3-4 requires parties opposing claims of patent infringement to produce or make available for inspection and copying:

(a) documents and information sufficient to show the operation of any aspects or elements of an Accused Instrumentality identified by the patent claimant in its P.R. 3-1(c) chart (*e.g.* source code, specifications, schematics, flow charts, artwork, or formulas);

---

[17]Pursuant to 35 U.S.C. § 102(f), a person is not entitled to a patent if he did not invent the subject matter he seeks to patent.

[18]Pursuant to 35 U.S.C. § 102(g), a person is not entitled to a patent even if he is the inventor if another person conceived of and reduced the invention to practice before the applicant.

-13-

(b)  a copy of each item of prior art identified under P.R. 3-3(a) that does not appear in the file history of the patent(s) at issue; and

(c)  documents and information, including summaries when reasonably available, sufficient to show the amount sold, revenues, costs, and profits of each Accused Instrumentality identified under P.R. 3-1(b) since the issuance of the patents-in-suit.

Id., Rule 3-4.  Under limited circumstances, a party may file "Final Invalidity Contentions."  Id., Rule 3-6.  Otherwise, changes to the preliminary contentions are permitted by court order "only if the presiding judge finds there is good cause for the requested changes."  Id., Rule 3-7.

Federal Circuit authority governs rules and deadlines such as those relating to invalidity contentions that are "intimately involved in the substance of enforcement of the patent right."  O2 Micro International Ltd. v. Monolithic Power Systems, Inc., 467 F.3d 1355, 1364 (Fed. Cir. 2006).  "The burden is on the [party seeking to amend its contentions] to establish diligence rather than on the opposing party to establish a lack of diligence."  Id. at 1366.  The deadline for BBI to file its Final Invalidity Contentions was July 27, 2012.[19]  "[T]he exclusion of evidence is often an appropriate sanction for the failure to comply with such deadlines."  Id. at 1369.  This is particularly true where the undisclosed information is significant, and the party failing to make the timely disclosure lacked diligence.  Id. (citing SanDisk

---

[19]Patent Case - Scheduling Order, Docket Entry No. 20, ¶ 18.

-14-

<u>Corp. v. Memorex Products, Inc.</u>, 415 F.3d 1278, 1292 (Fed. Cir. 2005) (finding no abuse of discretion in exclusion of evidence pertaining to theories of claim construction and infringement not disclosed as required by the local patent rules and the court's scheduling order)).

**B.   Analysis**

1.   <u>Background</u>

BBI served its Preliminary Invalidity Contentions to defendants/counter-plaintiffs on November 18, 2011.[20]   In its contentions, BBI listed five (5) U.S. Patents as allegedly anticipating prior art references, and an allegedly invalidating sale of prior art by Nantong Yongyu Plastics Co., Ltd. to Inno-Pack ("Inno-Pak Bags").[21]   BBI stated that:

> Prior art bags identical to the bags being sold by Better Bags, Inc. and being accused of infringing U.S. Patent No. 7,134,788 were sold and known in the United States of America more than a year before the application for the subject patent was filed.  More particularly, as stated in the Affidavit of Liu Dexin which was produced as part of the initial disclosure, Nantong Yongyu Plastics Co., Ltd. manufactured for and shipped to Inno-Pak, Inc., in or before 2001, the prior art bags.  Those bags were then sold by Inno-Pak, Inc. in the United States of America to Giant Eagle.  Those sales render the subject patent invalid.  Those bags are referred to herein as the

---

[20]Plaintiff's Preliminary Invalidity Contentions with Respect to United States Patent No. 7,134,788, Exhibit 1 to Fantapak and Inteplast's Motion to Strike and Exclude, Docket Entry No. 60.

[21]<u>Id.</u> at 1 (citing U.S. Patent Numbers:  5,682,730 issued November 4, 1997; 6,306,071 issued October 23, 2001; 6,364,530 issued April 2, 2002; 6,287,000 issued September 11, 2001; and 5,788,080 issued August 4, 1998).

Inno-Pak Bags.   Photographs of the Inno-Pak Bags are
attached.   Further, defendant inspected the Inno-Pack
Bags on October 18, 2011 and took samples which are now
in its possession.   Better Bags, Inc. also has packing
slips and invoices establishing the sale of Inno-Pak Bags
in 2001.[22]

BBI also stated that "[t]he Inno-Pak Bags anticipate every claim

asserted."[23]  On the chart identifying where specifically in each

alleged item of prior art each element of each asserted claim is

found, BBI responded only "Inno-Pack Bags."[24]

On April 10, 2012, in its response to Fantapak's Interrogatory

No. 2 on invalidity, BBI stated:

The patent is unenforceable because applicant failed
to disclose a relevant prior art, namely, U.S. Patent
No. 5,788,080 to Sill et al.

The pertinent claims of the patent are invalid for
the reasons stated in Sections (a), (b) and (c) in
PLAINTIFF'S PRELIMINARY INVALIDITY CONTENTIONS served on
November 18, 2011 and documents referred to therein and
accompanying the same.   Plaintiff incorporates herein
those sections and makes them part hereof.

Further, Plaintiff asserts obviousness based on U.S.
Patent No. 5,788,080 to Sill et al. ("Sill '080") in view
of U.S. Patent Number 6,536,951 to Sill ("Sill '951") or
in view of the "bottom load" zipper bags known and sold
in the United States since at least 2000.   It would be
obvious to lower perforations 30 of "Sill '080, take
zipper 44 of Sill '951 and place it to slide over
"zipper" 22 while tearing away at perforations 30.[25]

_____

[22]Id. at 2.

[23]Id. at 3.

[24]Id. at 3-6.

[25]Plaintiff's First Amended Responses to Illinois Tool Works
Inc.'s  and  Fantapak's  International  Corp.'s  First  Set  of
(continued...)

-16-

Even though BBI did not mention obviousness or U.S. Patent No. 6,536,951 to Sill in its Preliminary Invalidity Contentions served to defendants/counter-plaintiffs on November 18, 2011,[26] BBI neither moved to amend nor amended its invalidity contentions to include obviousness and/or U.S. Patent No. 6,536,951 to Sill by July 27, 2012, the deadline for submitting "final invalidity contentions and amend pleadings on invalidity claims."[27] Nevertheless, on August 17, 2012, BBI filed its Designation of Expert Witnesses (Docket Entry No. 56) identifying as an expert witness, Rafael Alvarado, "who will testify on the validity of U.S. Patent No. 7,134,788 and, more particularly, on novelty and obviousness."[28] Attached thereto is the Expert Report of Rafael Alvarado, BBI's president, indicating that in addition to the five U.S. Patents listed in BBI's Preliminary Invalidity Contentions, U.S. Patent 6,536,951 was considered in support of his conclusions on novelty and obviousness.[29]

---

[25](...continued)
Interrogatories to Better Bags, Inc., Exhibit B to Fantapak and Inteplast's Motion for Summary Judgment, Docket Entry No. 61, p. 3.

[26]Plaintiff's Preliminary Invalidity Contentions with Respect to United States Patent No. 7,134,788, Exhibit 1 to Fantapak and Inteplast's Motion to Strike and Exclude, Docket Entry No. 60.

[27]Patent Case - Scheduling Order, Docket Entry No. 20, ¶ 18.

[28]Better Bags, Inc.'s Designation of Expert Witnesses, Docket Entry No. 56.

[29]Expert Report of Rafael Alvarado, Exhibit A to Better Bags, Inc.'s Designation of Expert Witnesses, Docket Entry No. 56, p. 2 ¶ 9.

2.   Invalidity Contentions Based on Prior Sale of Inno-Pak
     Bags Will Not Be Stricken or Excluded

Defendants/counter-plaintiffs argue that BBI's invalidity
contentions based on the alleged sale of Inno-Pak Bags referenced in
BBI's Preliminary Contentions of Invalidity should be stricken and
excluded because "instead of providing a 'detail[ed] bases' for its
obviousness contentions as required by P.R. 3-3, BBI only stated that
'the Inno-Pak Bags anticipate every claim asserted,' and BBI's claim
chart only disclosed a mere reference to 'Inno-Pak Bags.'"[30]

BBI responds:

1.   Better Bags, Inc. ("BBI") served its Preliminary
Invalidity Contentions on November 18, 2011.  A copy is
attached as Exhibit A.   The Preliminary Invalidity
Contentions make reference to Inno-Pak Bags.  Those bags
are described and identified on page 2 of the Preliminary
Invalidity Contentions and pictures of the Inno-Pak Bags
were attached.   Those pictures are attached hereto as
Exhibit B.

2.   In Section (c) of the Preliminary Invalidity
Contentions, BBI refers to those same bags but because of
a clerical error it refers to them as Inno-Pack Bags
instead of Inno-Pak.   Section (c) includes a chart
identifying where specifically in each alleged item of
prior art each element of each asserted claim is found.
The chart is used for anticipation and not novelty when
it refers to Inno-Pack Bags.

3.   Fantapak alleges that Section (c) does not comply
with the rule because the Inno-pack bags are not defined.
BBI respectfully disagrees.   Those bags are clearly
defined and identified in the pictures of Exhibit B.
Accordingly, Fantapak's motion to strike the invalidity

---

[30]Fantapak and Inteplast's Motion to Strike and Exclude, Docket
Entry No. 60, pp. 8-9.  See also id. at 16.

contentions and Section (c) as to the use of the Inno-pak bags for anticipation should be denied.[31]

The court is not persuaded that BBI's invalidity contentions based on the alleged prior art sale of Inno-Pak Bags referenced in its Preliminary Contentions of Invalidity should be stricken and excluded for failure to comply with the Patent Rules.    BBI disclosed   the   Inno-Pak   Bags   in   its   Preliminary   Invalidity Contentions and asserted that the Inno-Pak Bags anticipated and rendered obvious every element of every claim allegedly infringed. Moreover, as defendants/counter-plaintiffs acknowledge, the affi-davit of Dexin Liu that BBI referenced and incorporated into in its Preliminary Invalidity Contentions stated that the "prior art bags [were] identical to the bags sold by Better Bags, Inc. and being accused of infringing U.S. Patent No. 7,134,788."[32]   In light of these disclosures the court is not persuaded that BBI failed to fulfill the requirement imposed by this Court's Patent Rule 3-3(c) to disclose "where specifically in each alleged item of prior art each element of each asserted claim is found."   Accordingly, the court is not persuaded that BBI's invalidity defense based on alleged prior art sale of Inno-Pak Bags should be stricken and excluded for failure to comply with the Patent Rules.

---

[31]Memorandum in Response to Motion to Strike Better Bags, Inc.'s   Expert   Invalidity   Report,   to   Strike   Its   Invalidity Contentions, and Exclude All Alleged Evidence and Testimony Based on Undisclosed Invalidity Contentions ("BBI's Response to Motion to Strike"), Docket Entry No. 65, pp. 1-2 ¶¶ 1-3.

[32]Id.

3.   <u>The Obviousness Contentions Contained in BBI's Expert Report Will Be Stricken and Excluded</u>

Asserting that BBI never attempted to supplement its invalidity contentions before the July 27, 2012, deadline for doing so set by the court's Scheduling Order,[33] defendants/counter-plaintiffs move the court to "enforce P.R. 3-3 and strike BBI's expert report as well as any alleged evidence or testimony relating to undisclosed obviousness combinations and undisclosed motivations for combining prior art references."[34]   In support of their motion to strike BBI's expert report, defendants/counter-plaintiffs argue that

> the obviousness opinions expressed in the Alvarado expert report are "based on references known to BBI at least since November of 2011 — when BBI's Preliminary Invalidity Contentions was submitted;"[35]

> "BBI never disclosed 'the detail bases' of the obviousness combinations disclosed in its Expert Invalidity Report as required by this Court's P.R. 3-1, before the July 27, 2012 deadline set by this Court's Scheduling Order;"[36] and

> "[a]s a result of BBI's representations made in its Preliminary Invalidity Contentions and BBI's failure to amend the same to include obviousness combinations that would later appear in BBI's Expert Invalidity Report for the first time, Fantapak's discovery was exclusively directed at investigating BBI's allegations of prior sale to Inno-Pak Bags based on the Affidavit of Dexin Liu."[37]

---

[33]Fantapak and Inteplast's Motion to Strike and Exclude, Docket Entry No. 60, pp. 1-2.

[34]<u>Id.</u> at 2.

[35]<u>Id.</u> at 5 ¶ 10.

[36]<u>Id.</u> ¶ 11.

[37]<u>Id.</u> ¶ 9.

> In response BBI acknowledges that it
>
> did not submit detailed analysis of its obviousness
> contentions with its Preliminary Invalidity Contentions
> because its obviousness analysis had not been fully
> developed as of that time. The obviousness analysis was
> developed later. BBI admits that its expert report on
> obviousness is not supported by what was disclosed in the
> Preliminary Invalidity contentions. However, BBI respect-
> fully request that the expert report not be stricken.[38]

BBI's admission that its expert report on obviousness is not

supported by the disclosures in its Preliminary Invalidity

Contentions, and BBI's failure either to rebut defendants/counter-

plaintiffs' contention that the obviousness opinions expressed in

the Alvarado expert report are "based on references known to BBI at

least since November of 2011"[39] or to offer any explanation for why

BBI failed to disclose its obviousness contentions by the July 27,

2012, deadline for doing so leads the court to conclude that BBI

failed to act diligently either in developing and/or disclosing its

obviousness contentions. See O2 Micro International, 467 F.3d at

1366 (recognizing that "[t]he burden is on the [party seeking to

amend its contentions] to establish diligence"). Accordingly, the

court concludes that defendants/counter-plaintiffs' motion to

strike and exclude BBI's expert report should be granted because

without explanation or leave of court, that report contains

obviousness contentions that are inconsistent with the Preliminary

Invalidity Contentions originally produced on November 18, 2011.

---

[38]BBI's Response to Motion to Strike, Docket Entry No. 65, p. 2 ¶ 4.

[39]Fantapak and Inteplast's Motion to Strike and Exclude, Docket Entry No. 60, p. 5 ¶ 10.

## IV.  **Motion for Sanctions**

Asserting that BBI knew that its prior-sale invalidity defense was false and misleading because there was no invalidating prior sale of plastic bags to Inno-Pak, and that BBI and Dexin Liu knew that the statements in Liu's affidavit were fabricated and false, Fantapak asks the court to strike the Liu affidavit as an uncorroborated affidavit of an interested party, exclude evidence of BBI's prior-sale invalidity defense, and impose monetary sanctions on BBI and Liu in the form of the attorney's fees and costs that Fantapak has incurred defending this lawsuit.[40]   In support of its motion for sanctions, Fantapak argues that it was required to engage in "activities [that] included such things as taking the deposition of Dexin Liu, opposing BBI and partners' meritless discovery motions, and repeatedly requesting the production of documents and information."[41]   "Fantapak therefore respectfully requests that this Court award Fantapak monetary sanction in an amount of at least its costs and attorney fees unnecessarily incurred in connection with defending against BBI's on-sale bar defense and the Liu Affidavit."[42]   Fantapak expressly asks the court to

> (1) dismiss BBI's 35 U.S.C. § 102(b) on-sale bar defense with prejudice;

---

[40]Fantapak's Motion for Sanctions, Docket Entry No. 58, pp. 3, 12-13, 15, and 19.

[41]Id. at 3-4.

[42]Id. at 4.

(2) strike the Liu Affidavit and exclude any related documents and information related to BBI's on-sale bar defense;

(3) award Fantapak its attorney's fees, costs and expenses associated with all matters arising out of or otherwise related to the Liu Affidavit as well as the related discovery and motions;

(4) hold that Dexin Liu committed perjury during his deposition;

(5) hold that Dexin Liu and his Nantong companies are in contempt of Court for failure to comply with the Court's Order; and

(6) grant any other relief the Court deems appropriate.[43]

In support of its motion for sanctions Fantapak contends that

[t]his case was initiated by BBI as part of a conspiracy to invalidate the '788 Patent through the use of a false affidavit and false testimony. . . Well before BBI initiated this Litigation, BBI and its sydicates, Raphael Alvarado ("Alvarado"), Dexin Liu, Nantong Yongyu and Nantong Chanrong Plastics Co., Ltd. (collectively, "Nantong"), Richard Ng and Forminco Sdn. Bhd. ("Forminco"), formed a joint business enterprise (hereinafter collectively referred to as the "BBI Partnership") to profit from the unlawful sales of plastic deli bags in violation of Fantapak's intellectual property rights under U.S. Pat. No. 7,134,788 (the "'788 Patent"). BBI's goal and objective was to be the sole distributor of infringing plastic bags in the U.S. for its partner and bag supplier, Nantong. In furtherance of the enterprise, BBI agreed to initiate this Litigation against Fantapak for the purpose of eliminating the only obstacle standing in BBI's and its partners' way — Fantapak's '788 Patent. The plan was to fabricate evidence for the purpose of invalidating the '788 Patent. In return for BBI's filing of the present Litigation, Liu agreed to channel all of its infringing sales into the U.S. through BBI in order to finance BBI's — and in essence its own — legal battle with Fantapak. In

---

[43]Fantapak's Reply in Further Support of Its Motion for Sanctions ("Fantapak's Reply"), Docket Entry No. 68, p. 2.

-23-

addition, Liu would further the conspiracy, *inter alia*,
by working with BBI and Ng to fabricate and submit a
false and self-serving affidavit designed to invalidate
the '788 Patent.[44]

In support of its contention that the statements in the Liu
affidavit were fabricated and false and that Liu committed perjury
during his deposition, Fantapak cites excerpts from Liu's
deposition showing that although Liu testified he took the
photographs attached to his affidavit, evidence subsequently
adduced shows that the photographs attached to Lui's affidavit were
taken by BBI's agent, Richard Ng.[45]  Fantapak also argues that Lui
admitted during his deposition that the bags pictured in his
affidavit were not manufactured in 2000 or 2001 as stated in his
affidavit but were instead manufactured in 2007-2009, and that Liu
admitted that when he signed the affidavit he had not seen either
a purchase order for the bags from Inno-Pak or a customs document
associated with the alleged sale to Inno-Pak in 2000 or 2001.[46]
Based on Liu's deposition testimony, Fantapak argues that the Liu

---

[44]Fantapak's Motion for Sanctions, Docket Entry No. 58,
pp. 1-2.

[45]Id. at 3.  See also the following exhibits attached to
Fantapak's Motion for Sanctions, Docket Entry No. 58: Ex. 7 (Liu
Deposition, pp. 257:15-258:4, where Liu states that he took the
photographs attached to his affidavit in 2007, 2008, or 2009, to
show Forminco Company the product that his company could produce);
Ex. 17 (April 1, 2011, e-mail from Richard Ng to Dexin Liu attached
to which are two electronic photographs of Inno-Pak Slider Bags,
documents LIU001130-LIU001136); Ex. 20 (metadata indicating photo-
graphs were taken on April 1, 2011).

[46]Liu Deposition, Exhibit 7 to Fantapak's Motion for Sanctions,
Docket Entry No. 58, pp. 254:11-256:15 and 259:4-260:24.

-24-

affidavit should be stricken, evidence of BBI's prior-sale invalidity defense excluded, and monetary sanctions imposed on Liu.

In support of its contention that BBI knew that its prior-sale invalidity defense was false and misleading, Fantapak cites the declaration of Jonathan Sill, "a manager of Inno-Pak, LLC, a North Carolina Limited Liability Company," and "the president of Inno-Pak, LLC's predecessor company, Inno-Pak, Inc."[47] Sill states in his affidavit:

> 3.   During the 2000-2003 time periods, Inno-Pak did not purchase, sell, distribute, request to be manufactured, or manufacture bags that have the product design depicted in Exhibit 1, hereinafter "top-header plastic slider bags."
>
> 4.   Sometime during 2011, I had a telephonic conversation with Mr. Rafael Alvarado of Better Bags, Inc., during which Mr. Alvarado inquired about whether during the 2000-2003 timeframe Inno-Pak had purchased top-header plastic slider bags from Mr. Dexin Liu, a Chinese citizen, or Mr. Liu's China-based companies Nantong Yongyu or Nantong Changrong.
>
> 5.   During the 2011 conversation with Mr. Alvarado, I indicated that during the 2000-2003 time periods, Inno-Pak did not purchase, sell, distribute, or manufacture top-header plastic slider bags, nor did Inno-Pak request that any entity manufacture top-header plastic slider bags, including Mr. Dexin Liu and Mr. Liu's companies Nantong Yongyu or Nantong Changrong.[48]

Based on Liu's deposition testimony and the Sill Declaration, Fantapak argues that

> Liu, BBI, and Ng knew that statements in the Liu Affidavit were false and the photos of the so-called

---

[47]Declaration of Jonathan D. Sill ("Sill Declaration"), Exhibit 30 to Fantapak's Reply, Docket Entry No. 68, ¶ 2.

[48]Id. ¶¶ 3-5.

Inno-Pak bags were not of bags that existed more than one
year prior to the filing date of the '788 Patent.
Moreover, the record before this Court shows that BBI was
aware of Dexin Liu's inability to provide evidentiary
support for his affidavit well before this lawsuit was
filed.  In fact, the lack of veracity of the statements
made in the Liu Affidavit is confirmed by the fact that
BBI's purported invalidity expert, its President Rafael
Alvarado, failed to rely on or even mention the Liu
Affidavit in his alleged expert report.[49]

Fantapak also argues that

the record before this Court establishes that BBI pursued
a prior sale invalidity defense knowing that it was
meritless and nonetheless continued its baseless defense
while continuing to infringe Fantapak's '788 Patent, and
continuing to cause Fantapak to incur substantial and
needless attorneys' fees and cost.[50]

The response to Fantapak's motion for sanctions filed by BBI

presents a different version of the facts supported by affidavits

submitted by BBI's owner, Rafael Alvarado; Forminco's manager,

Richard Ng; Dexin Liu; and BBI's attorney.[51]  In support of its

version of the facts, BBI asserts:

10.  Movants allege that Dexin Liu testified in his
deposition that he prepared his affidavit and that he
took the pictures of the bags that were attached to his
affidavit and that that testimony is grounds for perjury.
They base that on an allegation that Richard Ng prepared
the affidavit and not Dexin Liu.  It is true, that
because an affidavit has to be of a certain format and to
incorporate correctly the testimony of the affiant, BBI's
attorney prepared a blank form for the information to be
included in the affidavit by Dexin Liu correctly and to

_____

[49]Id. at 2.  See also Fantapak's Reply, Docket Entry No. 68,
pp. 1-2 (citing Sill Declaration, Exhibit 30 attached thereto).

[50]Fantapak's Reply, Docket Entry No. 68, p. 2.

[51]Memorandum in Response to Fantapak's Motion for Sanctions,
Docket Entry No. 64, and Exhibits A-D attached thereto.

have it notarized properly. Because Richard Ng speaks Chinese, he was asked to assist Dexin Liu in understanding the form and to incorporate his testimony correctly therein. There is nothing unusual about this practice as long as the affiant provides the truthful testimony. What Dexin Liu meant with his statement that he prepared the affidavit only Dexin Liu knows. The fact is, however, that he provided and incorporated his truthful testimony in the affidavit and he took the affidavit and had it notarized. In that respect he may claim that his statement is correct and truthful.

11. As regards the issue as to who took the pictures, the fact is that those pictures were in his files because they were produced by him to the movants. It is also true, however, that the pictures were taken by Richard Ng because the sample bags had already been sent to Richard Ng and Richard Ng had to take the pictures for the subject affidavit on April 1, 2011. Again, why Dexin Liu gave that answer noone knows except him. It may be the result of an honest mistake, false memory or perhaps he took pictures before and he was mistaken or confused.

12. Regardless of the reason, the false answer to that question does not affect the veracity of his testimony in the Liu Affidavit.[52]

The determination of whether Fantapak's or BBI's version of the facts is the correct version requires credibility determinations that can only be made at trial. Fantapak's allegations of perjury and misconduct are serious allegations, but neither Fantapak's allegations nor the evidence that Fantapak has adduced in support of those allegations persuades the court that Fantapak's motion for sanctions should be granted.

Liu is not a party and did not testify as a party representative. Liu's testimony whether by affidavit or by deposition is the testimony of a third-party witness, which whether

---

[52]Memorandum in Response to Fantapak's Motion for Sanctions, Docket Entry No. 64, p. 5 ¶¶ 10-12.

-27-

false or not, does not provide a basis for awarding sanctions against BBI.  See Rimkus Consulting Group, Inc. v. Cammarata, 688 F.Supp.2d 598, 648 n.36 (S.D. Tex. 2010).  Nor is the court persuaded that an award of sanctions against Liu is appropriate at this time.

Fantapak contends that Liu's affidavit contains false and fabricated statements and that Liu perjured himself during his deposition, but Fantapak has neither cited the legal standard for perjury nor argued that the evidence now before the court satisfies that standard.  The Supreme Court has stated that perjury occurs when "[a] witness testifying under oath or affirmation . . . gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." United States v. Dunnigan, 113 S.Ct. 1111, 1115 (1993).  In support of its argument that the court should impose monetary sanctions upon Liu, Fantapak points to inconsistencies in Liu's testimony and contradictory testimony from other witnesses.  Mere inconsistencies in a witness's testimony and contradictory testimony from other witnesses is not sufficient to establish perjury.  See Koch v. Puckett, 907 F.2d 524, 531 (5th Cir. 1990) (citing Little v. Butler, 848 F.2d 73, 76 (5th Cir. 1988) (inconsistencies in witnesses' testimony at trial are to be resolved by trier of fact and do not suffice to establish that certain testimony is perjured)).

-28-

Fantapak cites cases in which courts have sanctioned parties for discovery abuse, but Fantapak has not cited any cases with facts similar to this case in which courts sanctioned either a third-party witness such as Liu, or a party such as BBI by striking evidence, excluding a defense, or awarding attorney's fees and costs to the party seeking sanctions. Nor has Fantapak grounded its motion for sanctions on a statute, rule, or other legal basis. All but one of the cases that Fantapak cites in support of its motion for sanctions are inapposite because they concern sanctions imposed on a party for the party's conduct, not for the conduct of a third-party witness such as Liu. See, e.g., Certain Underwriters at Lloyd's of London v. Corporate Pines Realty Corp., No. H-06-3361, 2008 WL 4443065, at *3-*4 (S.D. Tex. September 25, 2008) (barring the defendant from producing any evidence in support of its lost-income counterclaim at trial in light of the defendant's obstructionist discovery practices). The only arguably comparable case cited by Fantapak is Harris v. Auxilium Pharmaceuticals, Inc., 664 F.Supp.2d 711, 725 (S.D. Tex. 2009), rev'd on other grounds, 473 Fed.Appx. 400 (5th Cir. 2012), where the court granted the defendants' motion to strike the affidavit of a third-party witness upon concluding that conduct of the plaintiff and third-party witness deprived the defendant of the opportunity to counter the allegations made in the affidavit. Here, Fantapak has not argued that it has been deprived of the opportunity to counter the

-29-

allegations made in the Liu affidavit, and the record before the court does not support such an argument.

Preclusion of evidence and/or defenses, and award of monetary sanctions, are drastic remedies generally confined to exceptional cases where a party's failure to provide requested discovery results in prejudice to the requesting party.  Although Fantapak argues that it has been forced to expend resources needlessly, Fantapak does not argue that BBI's and/or Liu's conduct has prejudiced its ability to present a defense to BBI's claims. Accordingly, the court is not persuaded that the record now before the court warrants the drastic remedies sought in Fantapak's Motion for Sanctions.  However, Fantapak's Motion for Sanctions will be denied without prejudice to being reurged later should the evidence adduced at trial bear out Fantapak's version of the facts.

## V.  Conclusions and Order

Fantapak's Motion for Sanctions (Docket Entry No. 58) is **DENIED WITHOUT PREJUDICE.**

Fantapak and Inteplast's Motion to Strike Better Bags, Inc.'s Expert Invalidity Report, to Strike Its Invalidity Contentions, and Exclude All Alleged Evidence and Testimony Based on Undisclosed Invalidity Contentions (Docket Entry No. 60) is **GRANTED IN PART** and **DENIED IN PART** as follows:

   (a)  The Motion to Strike BBI's Invalidity Contentions
        for failure to comply with P.R. 3-3 is **DENIED;**

(b)   The Motion to Strike BBI's Expert Invalidity Report
      for failure to comply with P.R. 3-3 is **GRANTED;**

(c)   The Motion to Exclude All Alleged Evidence and
      Testimony Based on BBI's Expert Invalidity Report's
      new allegations of anticipation and obviousness
      combinations for failure to comply with P.R. 3-3 is
      **GRANTED;**

(d)   The Motion to Exclude All Alleged Evidence and
      Testimony of invalidity based on the alleged prior
      art sale of "Inno-Pak Bags" for failure to comply
      with P.R. 3-3 is **DENIED;** and

(e)   The Motion to Exclude All Alleged Evidence and
      Testimony of invalidity based on U.S. Pat.
      Nos. 5,682,730, 6,306,071; 6,364,530; 6,287,000,
      and 5,788,080 for failure to comply with P.R. 3-3
      is **DENIED.**

Fantapak and Inteplast's Motion for Summary Judgment of Patent
Infringement (Docket Entry No. 61) is **GRANTED.**

The Order Granting Joint Motion to Stay the Scheduling Control
Order [Doc. No. 20] (Docket Entry No. 63) is **VACATED.**  The parties
will submit an agreed proposed scheduling order within fourteen
(14) days from the entry of this Memorandum Opinion and Order.

**SIGNED** at Houston, Texas, on this 9th day of April, 2013.

SIM LAKE
UNITED STATES DISTRICT JUDGE

-31-